**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**HAWO MUHAMMAD HASSAN,**

                Petitioner,

**v.**
                                    **Civil No.: 5:18CV122
(JUDGE STAMP)**

**F. ENTZEL, Warden**

                Respondent.

## REPORT AND RECOMMENDATION

This case is before the undersigned for consideration of *pro se* Petitioner

Hassan's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241,

Respondent's Motion and Memorandum to Dismiss or, in the Alternative, for Summary

Judgement, and Petitioner's Memorandum in Response. ECF Nos. 1, 15, 16, 22.

## Procedural History

On July 20, 2018, Petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. §

2241.  ECF No. 1. On July 23, 2018, Petitioner paid the $5 filing fee. ECF No. 4. On

February 19, 2019, the undersigned ordered Respondent to show cause as to why the

writ should not be granted. ECF No. 11.

On March 5, 2019, Respondent answered with a Motion to Dismiss or, in the

alternative, Motion for Summary Judgment with a Memorandum in Support and exhibits.

ECF Nos. 15 & 16. A Roseboro Notice was issued to the Petitioner by the undersigned

on March 6, 2019, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir.

1975), instructing Petitioner of her right to file a response to Respondent's Motion and

Memorandum. ECF No. 16. On April 10, 2019, the Petitioner filed a Memorandum in Response. ECF No. 22.

## I.    Facts

On August 5, 2010, the Federal Bureau of Investigation ("FBI") arrested the Petitioner in connection with federal criminal charges alleging that she conspired to provide material support to a foreign terrorist organization. ECF No. 16-1 at 4. On October 20, 2011, a federal jury convicted the Petitioner of conspiring to provide material support to a foreign terrorist organization and making false statements. Id. at 13. On that same date, the United States District Court for the District of Minnesota released the Petitioner pending sentencing and ordered that she reside at a halfway house or community corrections Center. Id. at 15. The court directed the Petitioner to follow all halfway house rules and regulations. Id. The court further ordered that the Petitioner be "restricted to 24-hour-a-day lockdown except for medical necessities and Court appearances or other activities specifically approved by the Court." Id.

On May 16, 2013, the District of Minnesota sentenced the Petitioner to 120 months in federal prison. ECF No. 16-1 at 18. The BOP has computed the sentence beginning on May 16, 2013, the day it was imposed. Id. at 24. The BOP applied two days of jail credit, August 5, 2010 and October 20, 2011, towards the Petitioner's federal sentence. Id. The Petitioner's current projected release date via good conduct time is January 28, 2022. Id.

### The Pleadings

**A.  The Petition**

The Petitioner alleges that the time she spent in the halfway house awaiting sentencing, from October 20, 2011 through May 6, 2013, should be applied to her federal sentence. In support of her allegation, the Petitioner argues that the time she spent at the halfway house was "official detention" for purposes of 18 U.S.C. § 3585(b). The Petitioner maintains that denial of credit for this time violates the language of the equal protection clause of the Constitution. The Petitioner further alleges that after she was sentenced on May 16, 2013, she was remanded to the custody of the United States Marshal and was jailed for one day in the Sherburne County Jail that day and then transferred to the Ramse County Jail from May 17, 2013 to June 17, 2013, for a total of 31 days. The Petitioner maintains that those 31 days were not credited to her sentence. For relief, the Petitioner is seeking credit for the 18 months, 3 weeks and 4 days she spent in a hallway house between her conviction and sentencing and the 31 days she spent in two county jails following her sentencing until she was taken to the Oklahoma Transfer Center for designation to SFF Hazelton.

**B. Respondent's Motion and Memorandum**

Respondent first alleges that the Petitioner filed this § 2241 habeas without exhausting her administrative grievances. Because she has not established that administrative review would be futile, the Respondent maintains that this action should be dismissed because the Petitioner cannot circumvent the BOP administrative grievance process to litigate her claims. The Respondent also argues that the Petitioner was not in official detention when she resided in a halfway house pending sentencing, and accordingly, she is not entitled to credit for that time to reduce her federal prison sentence. Finally, the Respondent notes that the BOP computed the Petitioner's

federal sentence to begin on May 16, 2013, the date that she was sentenced, and therefore, she is not entitled to credit for time spent in county jails after that date because it has already been credited toward her federal prison sentence.

## C. Petitioner's Response

First, the Petitioner alleges that she has exhausted her administrative grievances. Specifically, she notes that she filed a BP-9 with the warden on December 4, 2017 seeking credit against her sentence for the period October 20, 2011 through May 16, 2013. ECF No. 22-4 at 2. Her BP 9 was denied on December 20, 2017. ECF No. 22-5 at 2. Her lawyer than sent a letter to the Mid-Atlantic Regional Director on January 22, 2018 asking that the region reconsider Warden Entzel's denial and recognize that her pre-trial confinement was the functional equivalent of being in jail. ECF No. 22-6 at 2. On February 13, 2018, Angela Dunbar, the Regional Director sent a letter to counsel finding that the Warden's decision was correct and in compliance with agency policy. The Petitioner maintains that she then sent a BP-11 to the Central Office of May 4, 2018, waited fifty days and did not receive a response. In addition to alleging that she exhausted her administrative grievances, she also maintains that the requirement that federal prisoners exhaust administrative remedies before filing a habeas petition was judicially created, and it is not a statutory requirement. Finally, the Petitioner argues that her confinement in the halfway house was both official and detention within the meaning of 18 U.S.C. § 3585(b), because that section clearly contemplates that a person who is locked up for 24 hours a day pursuant to a court order is in official detention.

## II.     <u>Standard of Review</u>

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all

the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761,

765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002);

<u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint

must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>,

where it held that "a claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted

unlawfully" to meet the plausibility standard and survive dismissal for failure to state a

claim. <u>Id</u>.

## B. Motion for Summary Judgment

The Supreme Court has recognized the appropriateness of summary judgment

motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases.

<u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977); <u>see</u> <u>also</u> <u>Maynard v. Dixon</u>, 943 F.2d

407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); <u>United States v. Lee</u>, 943 F.2d 366, 368 (4th Cir.

1991).

Motions for summary judgment impose a difficult standard on the moving party

because it must be obvious that no rational trier of fact could find for the nonmoving

party. <u>Miller v. FDIC</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence

of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of

summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Any

permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Anderson</u>, 477 U.S. at 248-49.

## III.     <u>Analysis</u>

### A. <u>Exhaustion of Administrative Remedies</u>

Generally, a federal inmate must exhaust available administrative remedies before she files a habeas petition. <u>See</u>, e.g., <u>McClung v. Shearin</u>, 90 Fed.Appx.444 (4th Cir. 2004); <u>Carmona v. U.S. Bureau of Prisons</u>, 243 F.3d 629, 634 (2d Cir. 2001); <u>Martinez v. Roberts</u>, 98 F.3d 757 (3d Cir. 1996) (same); <u>Greene v. Warden FCI Edgefield</u>, 2017 WL 1458997 (D.S.C. 2017) (same); <u>McCallister v. Haynes</u>, 2004 WL 3189469 (N.D. W. Va. 2004) (same). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decision should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources… (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" <u>Alexander v. Hawk</u>, 159 F.2d 1321, 1327-28 (11th Cir. 1998) (internal citations omitted).

However, because the statute authorizing habeas lawsuits does not expressly require administrative exhaustion, <u>Reeder v. Phillips</u>, 2008 WL 2434003 at *2 (N.D.W. Va. June 12, 2008), this Court retains discretion to disregard the exhaustion requirement in "pressing circumstances." <u>Id.</u> at *3. However, exhaustion should only be excused where administrative review would be futile. <u>Jaworski v. Gutierrez</u>, 509 F.Supp.2d 573 (N.D.W. Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rules adversely. <u>Reeder</u>, 2008 WL 2434003 at *3.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). <u>See</u> 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP- 9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[1] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office</u>, 986 F.Supp. 941, 943 (D. Md. 1997).

---

[1] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

In the instant case, the Petitioner failed to properly and/or timely exhaust her administrative grievances. Although the Petitioner filed a BP-9 at the facility level, it appears the BOP did not consider her lawyer's letter, dated January 22, 2018, to be the equivalent of a BP-10, or appeal to the regional director. Moreover, even if that letter should have been construed as a BP-10, the responsive letter is dated February 13, 2018. Moreover, the Plaintiff did not file her BP-11 until May 4, 2018, 80 days later, and 50 days late. However, in reviewing the responsive letter filed by the Regional Director, it appears certain that the Petitioner's BP-11, if timely filed, would have been denied. Accordingly, the undersigned belies that exhaustion should be excused, and this matter should be decided on the substantive merits.

**B. <u>Sentence Calculation</u>**

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination when the sentence commences. <u>United States v. Wilson</u>, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for **any time he has spent in official detention prior to the date the sentences commences**: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

<u>Id.</u> (emphasis added).

In <u>Reno v. Koray</u>, the Supreme Court considered the meaning of "official detention" in 18 U.S.C. § 3585(b). 515 U.S. 50, 52, 55-56 (1995). The Court considered

whether a defendant who was released to a Volunteers of America ("VOA") community treatment center pending sentencing, but whose "release order" required that he be "confined to the premises" and was without "authoriza[tion] to leave for any reason" unless accompanied by a government agent was in "official detention." Id. at 52-53. The Court held that a defendant suffers "detention" only when committed to the custody of the Attorney General; a defendant who is admitted to bail on restrictive condition is "released." Id. at 57. The Court acknowledged that under this definition a defendant could be "released" even though he or she was subject to restraints that did not materially differ from those imposed on "detained" defendants. Id. ay 62-63. The Court explicitly rejected the notion that the determination of whether a person was in "official detention" depended on whether he or she was subjected to "jail-type confinement." Id. at 64. The Court concluded that the time the defendant spent at the VOA community treatment center while "released" on bail was not "official detention," and therefore, the defendant was not entitled to credit against his sentence of imprisonment. Id. at 65.

The Order entered by the District of Minnesota, dated October 20, 2011, the date the Petitioner was convicted, specifically noted that certain conditions were added to her release. Specifically, she was required to maintain residence at a halfway house or community corrections center and follow all rules and regulations of the facility. In addition, she was restricted to 24-hour-a-day lockdown except for medical necessities or other specific activities specifically approved by the Court. ECF No. 22-3 at 2. However, despite the restrictions placed on her, she was not under the complete control of the BOP, and accordingly she is not entitled to credit against her sentence for the time she spent in the hallway house between her conviction and sentencing.

Furthermore, a federal prisoner cannot receive double credit for her detention time. U.S. v. Wilson, 503 U.S. 329, 337 (1992). In the instant case, the BOP computed the Petitioner's federal prison sentence to commence on May 16, 2013, the same date she was sentenced. Therefore, to the extent the Petitioner requests credit for 31 days she spent in two county jails before arriving at the Oklahoma Transfer Center, she is not entitled to the same because the BOP has already applied that time to her federal prison sentence. ECF No. 16-1 at 24.

### IV.  Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss or for Summary Judgment" **[ECF No. 15]** be **GRANTED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas

v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: August 27, 2019

*/s. James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE